UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK


UNITED STATES OF AMERICA      *     Case No. 08-MJ-361(JMA)
                                     *
                                     *     Brooklyn, New York
                                     *     April 15, 2008
     v.                                *
                                     *
MICHAEL A. IVERY,             *
                                     *
           Defendant.     *
                                     *

* * * * * * * * * * * * * * * *

TRANSCRIPT OF CRIMINAL CAUSE FOR IDENTITY HEARING
BEFORE THE HONORABLE VIKTOR V. POHORELSKY
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government:           WINSTON PAES, ESQ.
                              Asst. United States Attorney
                              United States Attorney's Office
                              271 Cadman Plaza
                              Brooklyn, NY 11201


For the Defendant:           DOUGLAS G. MORRIS, ESQ.
                              Federal Defenders
                              of New York, Inc.
                              16 Court Street
                              Brooklyn, NY   11201-4859


Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

**Fiore Transcription Service, Inc.**
**67 Elaine Drive**
**Shelton, Connecticut 06484 (203)929-9992**

1          (Proceedings commenced at 2:51 p.m.)

2                    THE CLERK:  Criminal cause for identity

3    hearing, Case No. 08-361-M, United States versus Michael

4    Ivery.

5                    Counsel, please state your name for the record.

6                    MR. PAES:  Winston Paes for the United States.

7    Good afternoon, Your Honor.

8                    MR. MORRIS:  Douglas Morris, Federal Defenders for

9    Mr. Ivery.  Good afternoon, Judge.

10                   THE COURT:  Good afternoon.  I understand that an

11   identity hearing has been scheduled for today.

12                   MR. MORRIS:  That's correct.

13                   THE COURT:  So is the government prepared to

14   proceed?

15                   MR. PAES:  Yes, Your Honor, we are.  I would like

16   to just bring one matter to the Court's attention.  When

17   Judge Azrack scheduled Tuesday for the identity hearing, she

18   did realize it was a very short time for the government.

19                   And although we are prepared to go forward with it

20   and we believe we have enough evidence to go on it, the case

21   agent is not -- is out of state today.  So if at the end of

22   it, we -- if the Court feels we haven't proved enough, we'd

23   like to request an extension.

24                   MR. MORRIS:  Your Honor, if I just might mention.

25   The issue as it was -- as I understood it, was raised on

1    Friday, was an issue about the case agent having knowledge in

2    regard to the identifying information about my client in

3    paragraph 3 of the complaint about who he -- the person

4    who -- about my client's identity.

5            And we are not going to contest the allegations

6    made in paragraph 3 of the complaint, namely --

7            THE COURT: Of the complaint. I have an affidavit

8    in support of the removal.

9            MR. MORRIS: That's what I'm referring to, yes,

10   Judge.

11           THE COURT: And for whatever reason, my

12   paragraph -- I don't have a paragraph 3. I go from paragraph

13   2 to paragraph 4. I don't know if I'm -- I'm not done --

14           MR. MORRIS: You're right. What I was referring to

15   is the paragraph preceding paragraph 4. And as I look at it,

16   it is numbered paragraph 2.

17           THE COURT: Okay. Okay.

18           MR. MORRIS: And it states they are -- that my

19   client's passport was issued by the country of Jamaica in the

20   name of Michael A. Ivery. We're not going to contest that.

21   That he possessed a legal permanent resident card in the name

22   of Michael A. Ivery. We're not going to contest that. And

23   that he confirmed that he his Michael A. Ivery. We're not

24   going to contest that.

25           Those were -- that was the purpose of the case

1    agent's presence and the reason why we had said on Friday

2    that if the government needed a continuance at the end of the

3    hearing today, and we did not stipulate to those matters,

4    that there could be a continuance.  But, as I've just said,

5    we don't contest those -- those issues.

6            So I'm just concerned that the government not take

7    the position that if at the end of today's hearing that they

8    put on everything they could, that they don't get a chance to

9    do a do-over, so to speak.  That the issues as to who was

10    indicted in Florida, that did not require the presence of the

11    case agent.

12            MR. PAES:  Your Honor, my understanding of what

13    Judge Azrack did say on Friday was I agreed that those were

14    just some of the issues, but given the early turnaround time

15    and -- which was basically to accommodate defense counsel's

16    schedule -- she did allow us that if we weren't satisfied

17    with what we were able to put together by Tuesday that we'd

18    be allow to continue this.

19            But having said that, Your Honor, I think we are

20    ready to proceed and I believe at the end, we will have

21    identified the defendant.

22            THE COURT:  When was the -- when did the defendant

23    first appear?

24            MR. MORRIS:  Last Friday, Judge.

25            THE COURT:  Right.  Okay.  And what is the -- I

1   think the government has what; ten days for an identity

2   hearing?

3           MR. MORRIS:  That's correct, Judge.  What --

4           THE COURT:  Let me just finish.  If the government

5   has up to ten days for an identity hearing and they would

6   like to just adjourn today without proceeding today, without

7   -- in other words, I understand your concern not to have a

8   do-over.

9           And if you don't want a do-over, then the

10  government -- and the government doesn't want to consent to

11  not having a do-over, then I can just adjourn the matter and

12  we'll go forward on one day when everybody is ready.

13          All right.  I mean, but -- because there's a

14  dispute about why a continuance would be granted.  Right?

15  You have one view.  Mr. Paes, is it?

16          MR. PAES:  Paes.  That's correct, Your Honor.

17          THE COURT:  Mr. Paes has another view.  And before

18  we get started, I don't like to be in a position of where I'm

19  at the end of the day and say, "Well, you don't quite have

20  enough, so I'm going to give you a continuance."  And, you

21  know, I don't want to be in a position of saying you can get

22  a do-over, as Mr. Morris says.

23          So the other only -- unless Mr. Morris consents to

24  your doing it this way, we can just adjourn it unto a date

25  when you're ready.

1          MR. MORRIS:  Your Honor, if I just might add.  The

2     reason -- first of all, we would like to go forward today.  I

3     would like to -- I would like to --

4          THE COURT:  I understand.  But if the government

5     doesn't have -- because it's short-term, the government

6     doesn't have the witnesses it needs, then I'm going to give

7     them a continuance.

8          MR. MORRIS:  Your Honor, I would like to explain

9     the reason why we asked for a short date for the hearing.

10         The reason is that I have a viable bail application

11     for my client, but the government has informed me that

12     they've lodged a detainer against my client based exclusively

13     on the indictment in Florida in this case.

14         If the indictment is not of my client and is of

15     someone else, then they would not -- that then there would

16     also be no reason for that detainer, and I would be able to

17     get my client out on bail.

18         THE COURT:  But I'm a little lost.  I'm not sure

19     what you mean.

20         MR. MORRIS:  In other words, the issue in this case

21     is who was indicted down in Florida.

22         THE COURT:  Well, I understand that.  But how can

23     there be a detainer if we've already arrested Mr. Ivery on

24     the warrant that was issued?  I mean, at one -- either

25     he's -- do you follow what I'm saying?

1         MR. MORRIS:  Well, Your Honor, my client is -- up

2   until the time of his arrest, he has been here legally.  He

3   has a permanent resident card and there was no question about

4   his being in the country legally.  When he was arrested on

5   this case, it was at that point that immigration and customs

6   enforcement --

7         THE COURT:  Oh, I see.  There's an immigration

8   detainer is what you're talking.

9         MR. MORRIS:  Yes.

10         THE COURT:  I'm sorry.  I didn't understand that.

11   That's what you're saying.

12         MR. MORRIS:  Yes.  And so they lodged that detainer

13   based exclusively on the indictment in Florida --

14         THE COURT:  Right.

15         MR. MORRIS:  -- which might not be of my client.

16         THE COURT:  Right.  No, I understand that.  But --

17         MR. MORRIS:  And so in terms of the balance of the

18   prejudices, as we discussed before Magistrate Azrack several

19   days ago, I understand the government's concern, but my

20   concern was that it would be unfair to hold my client in

21   custody for any more time than necessary if, in fact, he's

22   not the person who was indicted in Florida.  In any case, we

23   would like to proceed.

24         THE COURT:  Mr. Paes, it's your choice.  You want

25   to proceed today, fine.  But if at the end of the proceeding

1    today, there's not enough evidence, then Mr. Ivery will be

2    found not the person here.  I'm not going to -- we're not

3    going to do this twice is what I'm saying.

4            So you can ask for a continuance.  It will be

5    granted if you don't feel comfortable with your evidence.

6    All right.  Mr. Morris is not consenting to that, as I

7    understand it.

8            MR. PAES:  I thought he was, Your Honor.

9            MR. MORRIS:  Your Honor, I can make an alternative

10   suggestion, which is at the end of the evidence we can

11   readdress this issue.  I mean, if it turns out --

12           THE COURT:  Do you want to have an argument about

13   whether a continuance is necessary after I say that there's

14   not enough evidence, he's going to need to go get more

15   evidence?

16           MR. MORRIS:  Well, I mean, I don't know the state

17   of the government's evidence.

18           THE COURT:  I don't either.

19           MR. MORRIS:  And, you know, perhaps they'd make an

20   argument that there is a specific piece of evidence that they

21   were unable to get within the time period that they've had.

22   But if it's -- that they have a witness who has what a

23   witness would have whatever the time period was, I think we

24   should go forward.

25           MR. PAES:  Your Honor, like I said, I think we're

1    ready to go forward today with the evidence we have.  But --

2    if Mr. Morris is going to allow us to --

3              THE COURT:  Well, Mr. Morris said we could take it

4    up at the end of the day.  At the end of the proceeding.

5    Right?

6              MR. MORRIS:  Yes.

7              THE COURT:  All right.

8              MR. PAES:  I'm fine with that, Your Honor.

9              THE COURT:  So, I mean, I will take it up at the

10   end of the proceeding.  You could -- you need to call --

11   you're going to call witnesses, I take it?

12             MELISSA MAIN, GOVERNMENT'S WITNESS, SWORN

13             THE CLERK:  State your full name for the record.

14             THE WITNESS:  Melissa Main.

15             THE CLERK:  Thank you.

16             THE WITNESS:  Thank you.  Good afternoon, Judge.

17             THE COURT:  Good afternoon.  You may proceed.

18                       DIRECT EXAMINATION

19   BY MR. PAES:

20   Q    Good afternoon.

21             THE COURT:  Can you see from over there, Mr.

22   Morris?  Are you -- do you have a good enough vantage point?

23             MR. MORRIS:  (Indiscernible.)

24             THE COURT:  I'm sorry.

25             MR. MORRIS:  (Indiscernible.)

1          THE WITNESS:  Well, I can try to move.

2          MR. MORRIS:  Yes, Judge, I --

3          THE COURT:  Or you can sit at the middle table if

4    you prefer.

5          MR. MORRIS:  Okay.  Thank you, Judge.

6          THE COURT:  You may proceed, Mr. Paes.

7          MR. PAES:  Thank you, Your Honor.

8    BY MR. PAES:

9    Q    Good afternoon, Ms. Main.  By whom are you employed?

10   A    By the U.S. State Department Diplomatic Security

11   Service.

12   Q    And what is your title?

13   A    Special agent.

14   Q    How long have you been employed by the Department of

15   State?

16   A    A little over one year.

17   Q    And do you have information about an investigation

18   involving an individual named Michael A. Ivery?

19   A    Yes, I do.

20   Q    In obtaining that information, did you speak with other

21   law enforcement agents and review reports?

22   A    Yes, I did.

23   Q    Now, was there an arrest warrant based on an indictment

24   in the name of Michael A. Ivery issued in the Southern

25   District of Florida?

1    A    Yes, there was.

2    Q    And can you tell us what the arrest warrant and

3    indictment relate to?

4    A    Absolutely.  The indictment related to false statements

5    on U.S. application for passport, as well as claiming to be a

6    U.S. citizen on a U.S. passport.

7    Q    Okay.  Now, do you know the circumstance under which Mr.

8    Michael Ivery was arrested at JFK Airport?

9    A    Yes, I do.

10   Q    Can you please tell us what happened?

11   A    Absolutely.  On April 11th, 2008, the defendant was

12   arrested at John F. Kennedy International Airport.  When the

13   customs and border protection officers swiped his passport,

14   it came up that there was a warrant under that name, and he

15   was thereafter detained.

16   Q    Now, when he was detained, was his passport confiscated?

17   A    Yes, it was.

18   Q    Have you seen a copy of the passport?

19   A    Yes, I have.

20   Q    And whose name is the passport in?

21   A    Michael Anthony Ivery.

22   Q    And do you know what country it is issued by?

23   A    Yes.  From Jamaica.

24   Q    I'm now going to show you what is marked as Government

25   Exhibit 1.

1          MR. PAES:  May I approach, Your Honor?

2          THE COURT:  Yes.  Have you given Mr. --

3          MR. PAES:  Yes, I have, Your Honor.

4          THE COURT:  -- Morris a copy?

5          MR. PAES:  Yes, I have, Your Honor.

6          THE COURT:  Do you have an extra copy for me by any

7    chance?

8          MR. PAES:  Yes, I do, Your Honor.

9          THE COURT:  All right.  Thank you.

10         (Pause.)

11         THE COURT:  Thank you.

12   BY MR. PAES:

13   Q    Can you please tell us what is marked as Government

14   Exhibit 1?

15   A    It is a copy of a Jamaican passport issued in the name

16   of Michael Anthony Ivery.

17   Q    And is there a photograph on the passport copy in your

18   hand?

19   A    Yes, there is.

20   Q    And who is the individual on the photograph in the

21   passport?

22   A    The defendant, Michael Anthony Ivery.

23   Q    And is there a date of birth listed on the passport?

24   A    Yes, there is.

25   Q    And what is the date of birth?

1    A    December 28th, 1968.

2              MR. PAES:  Your Honor, I'd like to admit Exhibit 1.

3              THE COURT:  Any voir --

4              MR. MORRIS:  I'm sorry.  Thanks.

5              THE COURT:  You're offering Exhibit 1?

6              MR. PAES:  Yes, Your Honor.

7              THE COURT:  Mr. Morris, any voir dire?

8              MR. MORRIS:  No objection.

9              THE COURT:  No objection?  Exhibit 1 is received.

10             (Whereupon, Exhibit 1 was admitted into evidence.)

11   BY MR. PAES:

12   Q    Ms. Main, I'm now going to show you what is marked as

13   Government's Exhibit 2.

14   A    Okay.

15   Q    Can you please tell us what that document is?

16   A    Yes.  This is an NCIC entry for an arrest warrant.

17   Q    What is NCIC?

18   A    National Crime Information Center.

19   Q    Now, was this -- was this NCIC information available to

20   officers and agents at -- who detained and arrested Michael

21   Ivery at JFK Airport?

22   A    Yes, it was.

23   Q    What is the name of the individual on the NCIC printout?

24   A    Michael Anthony Ivery.

25   Q    And is there a date of birth present on the NCIC

1    printout?

2    A    Yes, there is.

3    Q    And what is it?

4    A    December 28th, 1968.

5    Q    And is this the same name and date of birth as on the

6    defendant's passport?

7    A    Yes.

8         MR. PAES:  Your Honor, I'd like to admit Government

9    Exhibit 2 into evidence.

10        THE COURT:  Any voir dire?

11        MR. MORRIS:  No.

12        THE COURT:  Any objection?

13        MR. MORRIS:  No objections.

14        THE COURT:  Okay.  Exhibit 2 is received.

15        (Whereupon, Exhibit 2 was admitted into evidence.)

16   BY MR. PAES:

17   Q    Did Mr. Ivery have any other identification on him when

18   he was arrested?

19   A    Yes, he did.

20   Q    And what was that?

21   A    He had a legal permanent United States identity card.

22   Q    And whose name was on the legal permanent resident card?

23   A    Michael Anthony Ivery.

24   Q    I'm now going to show you what is marked as Government

25   Exhibit 3.  Can you please tell us what is the document in

1    your hand marked as Government Exhibit 3?

2    A    Yes.  This is a copy of a permanent resident card in the

3    name of Michael A. Ivery.

4    Q    Is there a photograph on the permanent resident card?

5    A    Yes, there is.

6    Q    And who is the individual on the photograph on the

7    permanent resident card?

8    A    It is the defendant, Michael Anthony Ivery.

9    Q    Is there an alien number on the permanent resident card?

10   A    Yes, there is.

11   Q    And what is the number?

12   A    It's Alien No. 057891832.

13            MR. PAES:  Your Honor, I'd like to admit Government

14   Exhibit 3 into evidence.

15            THE COURT:  Mr. Morris, any voir dire?  Any

16   objection?

17            MR. MORRIS:  I have no voir dire, no objection,

18   with the understanding both as to this exhibit and Government

19   Exhibit 1, that they are, in fact, photocopies of one page

20   from each of the originals.

21            THE COURT:  Yes.  They are obvious photocopies and

22   so -- but that aside, Exhibit 3 is received.

23            MR. PAES:  Thank you.

24      (Whereupon, Exhibit 3 was admitted into evidence.)

25   BY MR. PAES:

1   Q    Ms. Main, I'm now going to show you what is marked as

2   Government Exhibit 4.  Can you please tell the Court what

3   that is?

4   A    Sure.  This is a report of investigation by the Miami

5   field office of the Diplomatic Security Service.

6   Q    And can you tell us when that was issued?

7   A    Yes.  It was issued on May 7th, 2007.

8   Q    Now, did the DSS agents in New York have this report in

9   their hands prior to the defendant's arrest on April 11,

10  2008?

11  A    Yes, they did.

12  Q    Can you tell me what is the alien registration number

13  provided below Michael Ivery's name on page 1 of the report?

14  A    Yes.  The alien registration number is A57891832.

15  Q    Now, does this number match the number on the

16  defendant's permanent resident card confiscated from the

17  defendant at his arrest at JFK Airport?

18  A    Yes.

19         MR. PAES:  Your Honor, I'd like to admit Government

20  Exhibit 4 into evidence.

21         THE COURT:  Any --

22         MR. MORRIS:  No objection.

23         THE COURT:  I'm sorry?

24         MR. MORRIS:  No objection.

25         THE COURT:  Exhibit 4 is received.

1          (Whereupon, Exhibit 4 was admitted into evidence.)

2     BY MR. PAES:

3     Q    Now, Agent Main, did the defendant speak to DSS agents

4     while initially being detained at JFK Airport?

5     A    Yes.

6     Q    And what did he tell them, upon being asked, if he was,

7     in fact, Michael A. Ivery?

8     A    He did confirm that that is his true identity.

9     Q    Thank you.

10              MR. PAES:  No further questions, Your Honor.

11              THE WITNESS:  Thank you.

12              THE COURT:  Mr. Morris, any cross examination?

13              MR. MORRIS:  Yes.

14                        CROSS EXAMINATION

15     BY MR. MORRIS:

16     Q    Ms. Main, you're familiar with the indictment from

17     Florida?

18     A    Yes, I am.

19     Q    And you are familiar with the grand jury testimony which

20     gave rise to this indictment?

21     A    I have not seen it, but yes, I'm aware that that

22     happened.

23     Q    And on what basis are you aware of that testimony?

24     A    I believe a fellow agent said something to me, but I did

25     not see it.  I did not see it in the grand jury.

1    Q    What did the fellow agent say to you?

2    A    I'm not sure.  Just that the indictment came from Miami.

3         MR. PAES:  Objection, Your Honor.  I don't see what

4    the relevance of what happened at the grand jury is at this

5    point.

6         THE COURT:  The objection is overruled.  The

7    objection is overruled.

8    BY MR. MORRIS:

9    Q    The indictment in Florida is the indictment of a person

10   who went to the passport office in Miami, Dade County, on

11   July 2nd of 2004; is that correct?

12   A    Yes, that is correct.

13   Q    And he -- that person presented himself to a Team Metro

14   Central Passport Acceptance Agency in Miami, Florida; is that

15   correct?

16   A    Yes.

17   Q    And that person put in a passport application; is that

18   correct?

19   A    Yes.

20   Q    And that person presented a birth certificate with that

21   passport application; is that correct?

22   A    Yes.

23   Q    And that passport application was in the name of

24   someone, Larry O'Neal Jones; is that correct?

25   A    That is correct.

1    Q    That was the name that was used; is that correct?

2    A    That is correct.

3    Q    And that person executed that application for the U.S.

4    passport in Miami, Florida on July 2nd of 2004; is that

5    correct?

6    A    Yes.

7    Q    Have you compared the signature on that passport

8    application to the signature on Mr. Ivery's passport,

9    Government Exhibit 1?

10            MR. PAES:  Objection, Your Honor.

11            THE COURT:  Overruled.

12            THE WITNESS:  Sorry.  Can you repeat that?

13   BY MR. MORRIS:

14   Q    Have you compared the signature on the passport

15   application submitted on July 2nd of 2004 in Miami,

16   Florida --

17   A    Mm-hmm.

18   Q    -- to the signature on the passport that Mr. Ivery used

19   in entering into the United States recently, namely in

20   Government Exhibit 1?

21   A    I believe you're referring to the Jamaican passport, and

22   no, I have not compared those two.

23   Q    Did you mean to say the Jamaican passport?

24   A    No, I did not compare the DS-11 application signature to

25   the Government Exhibit 1, Jamaican passport.

1    Q    Are you aware of any government investigator who has

2    made that handwriting comparison?

3    A    I'm not aware of any, no.

4    Q    You're aware that there was an investigation in Miami,

5    Florida in connection with the passport application that was

6    made there on July 2nd, 2004; is that correct?

7    A    Yes.

8    Q    And you're aware that two people were investigated as to

9    that passport application; is that correct?

10   A    I'm not aware of that, no.

11   Q    Have you read Government Exhibit 4?

12   A    Yes, I have.

13   Q    And does Government Exhibit 4 indicate that there is an

14   investigation of two different individuals who were

15   associated with the Jones record?

16   A    I believe you're referring to the true identity of who

17   Jones is and, yes, I believe an investigation was done into

18   him, too, but I'm not aware of it.  I have no case details on

19   that.

20   Q    You have the details that are contained in Government

21   Exhibit 4; is that correct?

22   A    I believe there are details in there, but I'm not aware

23   of them right now.  I cannot recollect them right now.

24   Q    Have your read Government Exhibit 4?

25   A    Yes, I have.

1    Q    And your memory be refreshed if you were to see

2    Government Exhibit 4?

3    A    Absolutely.

4    Q    Let me direct your attention to page 2 of Government

5    Exhibit 4, and ask you if that refreshes your recollection

6    that two individuals associated with the Jones record were

7    investigated.

8              THE COURT:  Are you asking her to review the whole

9    page or is there a particular portion of the page that you

10   would like her to review?

11   BY MR. MORRIS:

12   Q    Why don't I ask you to review the third full paragraph

13   on page 2 of Government Exhibit 4.

14   A    Yes.  This refreshes my memory.

15   Q    Okay.  And does that -- now that your memory is

16   refreshed, there were two different individuals associated

17   with the Jones record, who were investigated; is that

18   correct?

19   A    Yes.

20   Q    And one of the photographs appear to match the

21   photograph that was provided with the passport application;

22   is that correct?

23   A    Yes.

24   Q    And the other photograph did not match the photo of the

25   person of the photo provided with the passport application;

1    is that correct?

2    A    Yes.

3    Q    Are you also aware that there was an investigation of

4    corruption of the Team Metro Passport Application Acceptance

5    Office?

6    A    Yes.

7    Q    And that that corruption involved criminal activity

8    associated with the fraudulent issuance and acceptance of

9    passport applications?

10   A    Yes.

11   Q    And that, in fact, one of the people investigated was a

12   Nelson Diaz?

13   A    Yes.

14   Q    And Nelson Diaz was the person who, in fact, had

15   accepted this passport application; is that correct?

16   A    Yes.

17   Q    And that Nelson Dias admitted to investigators that he

18   deviated from established and accepted procedures in

19   accepting initial processing of U.S. passport applications?

20   A    Yes.

21   Q    And that Nelson Diaz said that at times he accepted pre-

22   signed U.S. passport applications from applicants?

23   A    Yes.

24   Q    And he claimed -- that Nelson Diaz claimed these federal

25   investigators that he would ask the applicant to sign again

1    on a separate piece of paper so he can compare the

2    signatures?

3    A    Yes.

4    Q    Are you aware that he -- whether he provided a separate

5    piece of paper, which showed the signature of the person who

6    presented this application at the passport office in Miami?

7    A    It's my understanding, I believe he did not.

8    Q    And that Nelson Diaz also admitted to investigators that

9    he processed U.S. passport applications from applicants who

10   did not provide required supporting proof of identity and

11   citizenship; is that correct?

12   A    Yes, that's in the report.

13   Q    And that he -- but Nelson Diaz said he would affix a

14   note of some kind advising to this situation, right?

15   A    Mm-hmm.  Yes.

16   Q    But you're not aware of any such note, are you?

17   A    No.

18   Q    In connection with this application?

19   A    No.

20   Q    And are you aware that the agents then presented Nelson

21   Diaz with this particular passport application in the name of

22   Michael Ivery; is that correct?

23   A    Yes.

24   Q    And that he did not recall in particular accepting or

25   initially processing this application; is that correct?

1    A    I do recall that on the report, yes.

2    Q    And that -- but he did see that this application was one

3    that he had, indeed, processed; is that correct?

4    A    Yes.

5    Q    And that agents and investigators presented him with

6    discrepancies that existed in this particular passport

7    application; is that correct?

8    A    Yes.

9    Q    And that he admitted that there was an error on his part

10   in properly verifying the information; is that correct?

11   A    Yes.

12   Q    And the agents also spoke with, particular, Maria Daihla

13   Maliera (phonetic); is that correct?

14   A    Yes.

15   Q    Who was the special projects coordinator and head of the

16   Team Metro Passport Application Acceptance Office; is that

17   correct?

18   A    Yes.

19   Q    And the investigator showed her the passport

20   applications and the various materials connected with the

21   investigation of this passport application; is that correct?

22   A    Yes.

23   Q    And that she said that there was a discrepancy in that

24   material; is that correct?

25   A    Yes.

1    Q    In fact, a discrepancy that was significant; is that

2    correct?

3    A    I don't recall that wording, but I could be refreshed.

4    Q    Do you recall a discrepancy that was troubling?

5    A    I don't recall the wording.

6    Q    But you haven't viewed this application.  Would looking

7    at it refresh your recollection?

8    A    Yes.

9    Q    Direct your attention to page 4 --

10                 THE COURT:  Of what?

11                 MR. MORRIS:  Of Government Exhibit 4.

12   BY MR. MORRIS:

13   Q    And direct your attention to the third to last

14   paragraph.

15   A    Yes.

16   Q    Does that refresh your recollection?

17   A    Yes.

18   Q    And that report of investigation indicated that Ms.

19   Valero, who was the special projects coordinator and head of

20   the Team Metro Passport Application Acceptance Office, found

21   the discrepancy significant; is that correct?

22   A    Yes.

23   Q    And she found the discrepancy troubling; is that

24   correct?

25   A    Yes.

1    Q    And there's no indication that Mr. Nelson Diaz, who

2    processed this application, was able to provide any

3    description of the person who came in and submitted the

4    application; is that correct?

5    A    That's correct.

6              MR. MORRIS:  Your Honor, I have no further

7    questions.

8              THE COURT:  Mr. Paes.

9                   REDIRECT EXAMINATION

10   BY MR. PAES:

11   Q    Ms. Main, has the defendant used a name other than

12   Michael A. Ivery in the past?

13   A    Yes.

14   Q    And what is the name used by the defendant?

15   A    Larry O'Neal Jones.

16   Q    And where did the defendant use this name?  I mean, on

17   what did he use this name?

18   A    He used it on a DS-11 application for a U.S. passport.

19   Q    Okay.  And where and when did he fill out this passport

20   application?

21   A    He filled it out in July, 2004, in Miami.

22   Q    And the defendant -- did the defendant provide a

23   photograph with that passport application?

24   A    Yes.  A photograph was provided.

25   Q    I'm now going to show you what's marked as Government

1    Exhibit 5.  Can you please tell the Court what that is?

2    A    Yes.  This is a DS-11 application for a United States

3    passport.

4    Q    Is there -- and whose name is that in?

5    A    Larry O'Neal Jones.

6    Q    Is there a photograph attached on that application?

7    A    Yes, there is.

8    Q    And who is that photograph of?

9    A    It is of the defendant, Michael Anthony Avery [sic] --

10   Ivery.  Excuse me.  Michael Anthony Ivery.

11   Q    And how do you know that?

12   A    Well, I can tell, because the picture here on the

13   application associated with Larry O'Neal Jones matches the

14   individual in the courtroom.  The defendant in the courtroom.

15   As well as the driver's license photos and past applications

16   for the legal permanent resident card, as well as this

17   application, match the defendant.

18        MR. PAES:  Your Honor, I'd like to admit Government

19   Exhibit 5 into evidence.

20        THE COURT:  Mr. Morris.

21        MR. MORRIS:  No objection with the understanding

22   that it's a photocopy, Your Honor.

23        THE COURT:  Yes.  It's a photocopy, and with that

24   understanding, Exhibit 5 is received.

25        (Whereupon, Exhibit 5 was admitted into evidence.)

1  BY MR. PAES:

2  Q    Now, how else do you know that the defendant, Michael A.

3  Ivery, was the individual who filled out this application for

4  U.S. passport in the name of Larry O'Neal Jones?

5  A    Well, the Diplomatic Security special agents down at the

6  Miami field office conducted an investigation, and throughout

7  their investigation, they were told by a confidential

8  informant that the defendant, Michael Ivery, is a co-

9  conspirator in a passport fraud ring, and they -- this

10 confidential informant stated that Larry O'Neal is, in fact,

11 Michael Ivery.

12 Q    Now, is there any other information the confidential

13 informant provided to DSS about the defendant, Michael Ivery?

14 A    Yes.  They provide -- the confidential informant

15 provided information that Michael Ivery worked at a

16 restaurant called John Michaels in New York.  He -- well, he

17 owned the restaurant is what the confidential informant said.

18 Q    Now, did defendant actually own this restaurant?

19 A    No.  He worked at John Michaels --

20 Q    Okay.  He worked --

21 A    -- in New York.

22 Q    -- at the restaurant?

23 A    He did work at the restaurant in New York, yes.

24 Q    Ms. Main, how can a citizen of Jamaica, who is not a

25 legal permanent resident, travel to the U.S.?

1           MR. MORRIS:  Objection.

2           THE COURT:  What's the grounds?

3           MR. MORRIS:  It's speculative.

4           THE COURT:  That objection is overruled.

5           MR. MORRIS:  Irrelevant.

6           THE COURT:  I'll hear it.  I'll see -- I'll see

7    what the relevance is.  I'll make -- but I'll permit some

8    questioning in this area.  But the form of the question is a

9    little confusing to me.  So maybe you need to restate.

10   BY MR. PAES:

11   Q    How does someone, who is a citizen of Jamaica, that

12   doesn't have a legal permanent resident [sic] in the United

13   States travel to the U.S. either on business or on pleasure?

14           MR. MORRIS:  Objection.

15           THE COURT:  Overruled.  Do you understand the

16   question?

17           THE WITNESS:  Yes, I do, Your Honor.

18           THE COURT:  All right.

19   A    By applying for a non-immigrant Visa.

20   BY MR. PAES:

21   Q    Now, when did the defendant become a legal permanent

22   resident?

23   A    In July of 2006.

24   Q    Is it February of 2006?

25   A    February of 2006, yes.

1   Q    Now, had the defendant applied for such a non-immigrant

2   visa prior to becoming a legal permanent resident in 2006?

3   A    Yes.

4   Q    And when was that?

5   A    In both 2002 and 2003, the defendant applied for a non-

6   immigrant visa to come to the United States, but he was

7   denied both times.

8   Q    And so what did the defendant, Michael Ivery, do after

9   his two visa applications were denied in '02 and '03?

10  A    After his visa applications were denied, the following

11  year in 2004, the defendant executed an application for a

12  U.S. passport in Miami.

13  Q    Thank you.

14          MR. PAES:  No other questions, Your Honor.

15          THE COURT:  Mr. Morris, any recross?

16          MR. MORRIS:  I do.

17                     RECROSS EXAMINATION

18  BY MR. MORRIS:

19  Q    In regard to the answer you gave to the last question,

20  that is your conclusion; is that correct?

21  A    No, that is a fact that he did apply in July of 2004 for

22  a passport in Miami.

23  Q    In your opinion?

24  A    No, there is an individual with that picture matching

25  that description applying for a passport.

1    Q    What you're saying is that someone applied for a

2    passport with that photograph; is that correct?

3    A    Yes.

4    Q    And similarly at the beginning when you said that Mr.

5    Ivery had used Larry O'Neal Jones in an application for U.S.

6    passport on July 2nd, 2004, that is your opinion based upon

7    what you know about the case; is that correct?

8    A    That is based on the relevant facts of the case, yes.

9    Q    On the relevant facts that as you have testified to them

10   here today; is that correct?

11   A    Yes, that's correct.

12   Q    You don't know -- you now that Nelson Diaz, the passport

13   agent who processed this application, has been investigated

14   for corruption; is that correct?

15   A    Yes.

16   Q    And you don't know whether, in fact, he looked at the

17   photograph that was used on this application; is that

18   correct?

19   A    I don't know either way.

20   Q    And you don't know whether he was being paid off to

21   process this application; is that correct?

22   A    I don't know that to be true or false.

23   Q    You don't know either way; is that correct?

24   A    Correct.

25   Q    But you do know that Nelson Diaz was being investigated

1   for corruption?

2   A    Yes.

3   Q    For his improper processing of passport applications?

4   A    Yes.

5   Q    And for his processing applications based upon documents

6   which -- or the lack of documents, which would have been

7   appropriate for processing the application; is that correct?

8   A    Yes.

9   Q    And so you don't know whether the photo on the

10  Government Exhibit 5 is, in fact, the photo of the person who

11  showed up at the office on July 2nd of 2004; is that right?

12  A    Correct.  I don't know either way.

13  Q    Now, in fact, you don't have any -- beyond the

14  application itself, you have no other evidence that Mr. --

15  that Mr. Ivery was in Miami, Florida on July 2nd of 2004; did

16  you?

17  A    I cannot recollect right now.

18  Q    Is there any other source of information that you would

19  want to look at to refresh your recollection in order to

20  answer that question?

21  A    Not that I know of right now, no.

22  Q    In fact, you're not aware of any other evidence, besides

23  what the government has presented in Government Exhibit 5,

24  that Michael Ivery, my client here today, was ever in Miami,

25  Florida; is that right?

1    A    I don't recollect anything about that.

2    Q    You don't recollect any affirmative evidence that he was

3    in Miami, Florida at any time; is that correct?

4    A    Affirmative or negative, yes, I do not recollect.

5    Q    Now, you have looked at the indictment in this case; is

6    that correct?

7    A    Yes.

8    Q    And it is an indictment against a single person; is that

9    right?

10   A    Yes.

11   Q    It is not an indictment, it is not an indictment

12   charging a conspiracy; is that correct?

13   A    Correct.

14   Q    And in terms of the information provided by the

15   confidential informant, that information involved whether Mr.

16   Michael Ivery might have been in -- connected with a passport

17   fraud ring conspiracy; is that correct?

18   A    Yes.

19   Q    But that information didn't specifically have to do with

20   whether my client, Mr. Michael Ivery, who sits in court

21   today, was in Miami, Florida on July 2nd of 2004; is that

22   correct?

23   A    I presume so.

24   Q    You presume that that it's correct that the

25   conspirator -- that the confidential informant didn't have

1    information on that issue; is that right?

2    A    I don't know either way.

3    Q    You don't know either way.  Thank you.

4              MR. MORRIS:  I have no further questions.

5              THE COURT:  Mr. Paes, any further redirect?

6              MR. PAES:  None, Your Honor.

7              THE COURT:  All right.  Thank you.  You may step

8    down.

9              THE WITNESS:  Thank you very much, Your Honor.

10             MR. MORRIS:  Can we make argument, Judge?

11             THE COURT:  You can.

12             MR. MORRIS:  Your Honor, I think it's clear that

13   the government has not shown that my client is the person who

14   is indicted in Miami, Florida for being present in Miami,

15   Florida on July 2nd of 2004.

16             All the indictment says is that someone presented

17   false information to the passport office in Miami on July 2nd

18   of 2004, as laid out in the indictment.  It does not provide

19   any indication on the face of the indictment or based upon

20   the testimony that the person who appeared there was my

21   client.  Only one person is charged in this indictment and

22   the person charged was the person who actually physically

23   appeared in that passport office on July 2nd of 2004.

24             What we do know is that the person who processed

25   this passport was a corrupt passport official.  Didn't

1    process the applications correctly.  Either didn't have the

2    proper documentation or used improper documentation.  Kept no

3    records of his improper acts that the witness was aware of,

4    and, in fact, the government has nothing to show that my

5    client is the person who appeared in that passport office on

6    July 2nd of 2004.  In fact, they can't even present evidence

7    my client was ever in Miami, Florida.

8         All the government has shown is that my client is

9    my client.  That Mr. Michael Ivery is here in court today,

10   but not that he's the person who appeared in the passport

11   office in Miami, Florida.

12        It's not a conspiracy indictment.  So even if the

13   government were to claim that my client had some connection

14   with whoever appeared in the passport office on July 2nd of

15   2004 in Miami, Florida, that's not what's being charged in

16   this indictment.

17        The government hasn't met its burden of proof by a

18   preponderance, and I would ask that the Court find that the

19   government hasn't shown his identity and dismiss the

20   complaint.

21             THE COURT:  Mr. Paes.

22             MR. PAES:  Your Honor, despite Defense counsel's

23   attempts to turn this into a mini trial, I think the only

24   issue under Rule 5(C) is whether the indictment and the

25   arrest warrant were issued for Michael A. Ivery, the

defendant present here.  And I believe looking at the
evidence, looking at the passport, the information, the data
that was provided for Michael A. Ivery, I believe that's who
this -- the government has shown that that is the Michael A.
Ivery, born, I believe, December, '68.  And I believe that's
the relevant evidence right here.

Defendant was -- was arrested based on the
indictment.  And so the only thing the government needs to
show, Your Honor, is the fact that the government -- the
defendant is, in fact, the individual was indicted and for
whom the arrest warrant was issued by Southern District of
Florida.  And we believe the defendant has -- we believe the
government has done that.

THE COURT:  All right.  And I believe the
government has met its burden of proving that the person who
is in court here is the person who is wanted in Florida on
the indictment.  The question of guilt, of course, is -- and
there are substantial arguments that could be made about
whether Mr. Ivery is -- actually committed the crime.

But the Court is satisfied that the evidence proves
that he is the person who was named in the indictment and who
is wanted in the Southern District of Florida for the offense
charged there.

So do we need to -- do you want to address bail now
or not?  You don't want to address bail, I take it, at this

1    point?  A removal in custody, Mr. Morris.

2            MR. MORRIS:  Your Honor, as I said at the

3    beginning, the government has told me that they have a

4    detainer.  So it doesn't make any sense at this point to

5    address the bail issue.  I would ask that bail be addressed

6    down in Florida.

7            THE COURT:  All right.  I'll note that on the

8    removal, on the commitment order.

9        (Pause.)

10           THE COURT:  All right.  Is that -- is there any

11   other matter to address today?

12           MR. PAES:  No.

13           MR. MORRIS:  No, Judge.

14           THE COURT:  All right.  We're adjourned.  Thank

15   you.

16           MR. PAES:  Thank you.

17       (Proceedings concluded 3:37 p.m.)

18       I, CHRISTINE FIORE, court-approved transcriber and

19   certified electronic reporter and transcriber, certify that

20   the foregoing is a correct transcript from the official

21   electronic sound recording of the proceedings in the above-

22   entitled matter.

23   _____          April 22, 2008

24      Christine Fiore, CERT

25          Transcriber

<u>INDEX</u>

WITNESSES
FOR THE
<u>GOVERNMENT</u>:      <u>Direct</u>      <u>Cross</u>      <u>Redirect</u>      <u>Recross</u>

Melissa Main        9          17          26            30


GOVERNMENT'S
<u>EXHIBITS</u>:                                                    <u>Received</u>

|   |   |   |
|---|---|---|
| 1 | Jamaican passport of Michael A. Ivery | 13 |
| 2 | NCIC entry for arrest warrant | 14 |
| 3 | Copy of permanent resident card | 15 |
| 4 | Report of investigation | 16 |
| 5 | DS-11 application for U.S. passport | 27 |